|   |   |
|---|---|
| | |

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA GREER, | 1:18-cv-480-LJO-SKO |
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE MOTION TO COMPEL ARBITRATION |
| v. | |
| STERLING JERLERS, INC., dba KAY JEWLERS, | (ECF No. 8) |
| Defendants. | |

## I. <u>INTRODUCTION</u>

Plaintiff Lisa Greer brings this action against her former employer, Sterling Jewelers, Inc., doing business as Kay Jewelers, alleging causes of action for disability discrimination, retaliation, labor code violations, wrongful termination, and intentional infliction of emotional distress. (Complaint ("Compl.") ECF No. 1-2.) Essentially, Plaintiff alleges that Sterling denied her reasonable accommodations for her medical condition, and retaliated against her for that condition. (Compl. ¶¶ 12-22.) The action, originally filed in Stanislaus County Superior Court, was removed to this Court on April 8, 2018. (ECF No. 1-1.) On April 18, 2018, Defendant filed a motion to compel arbitration of claims alleged by Plaintiff, arguing that Plaintiff signed a valid and binding arbitration agreement as to those claims. (ECF Nos. 8, 9.) Plaintiff opposes the motion, arguing that the arbitration agreement is unconscionable under California law and therefore unenforceable against her. (ECF No. 11.) Defendant filed a reply. (ECF No. 15.) The motion is ripe for review and is suitable for disposition without oral argument pursuant to Local Rule 230(g).

1

## II. FACTUAL BACKGROUND

Plaintiff was employed by Defendant as a sales associate at a Kay Jewelers in Modesto, California beginning in 2011. (ECF No. 12, Declaration of Raquel Hatfield ("Hatfield Decl."), Ex. 1 ¶ 12.) On the first day of her employment, Plaintiff signed a number of forms and documents, including an arbitration agreement. (ECF No. 13, Declaration of Lisa Greer ("Greer Decl.") ¶ 3; ECF No. 8-2, Declaration of Jamie Broadhead ("Broadhead Decl."), Ex. A.) Under the agreement, Plaintiff and Defendant both agreed to use an alternative dispute program, called the RESOLVE Program, to pursue any claims against the other party. (*Id.*) On September 5, 2016, Plaintiff went on disability leave due to a medical condition. (Hatfield Decl. Ex. 1 ¶ 13.) She returned to work on January 15, 2017, with certain medical restrictions. (*Id.* ¶ 14.) According to the Complaint, Defendant failed to engage in a good faith interactive process to determine reasonable accommodations, and instead retaliated against her. (*Id.* ¶¶ 12-17.) Plaintiff eventually resigned, giving her employer two weeks' notice on February 24, 2017. (*Id.* ¶ 21.) Later that day, she was terminated. (*Id.* ¶ 22.)

## III. STANDARD OF DECISION

Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 "create[s] a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). While the FAA reflects a "liberal federal policy favoring arbitration," *AT & T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone*, 460 U.S. at 24), "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "[T]he federal law of arbitrability under the [FAA] governs the allocation of authority between courts and arbitrators. Because the FAA mandates that district courts shall direct the

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed, the FAA limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citations and quotations omitted). In construing arbitration agreements, courts must "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

## IV. DISCUSSION

Defendant asserts that the claims raised here are covered by a binding arbitration agreement and therefore moves to compel arbitration. Although Plaintiff states that she "remains willing to go directly to binding arbitration" if ordered to do so by the Court, she argues that she is unwilling to submit to the pre-arbitration procedures under the RESOLVE Program and is further unwilling to submit a new claim as Defendant has apparently requested. (ECF No. 11 at 1.) Plaintiff also argues that the RESOLVE arbitration agreement is procedurally and substantively unconscionable under California law, and therefore unenforceable.

**A.    Assent**

The threshold issue in deciding a motion to compel arbitration is "whether the parties agreed to arbitrate." *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988). Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). Under California contract law, an arbitration agreement is valid only if the parties assent to it or otherwise act in a manner that would show "intent to use . . . silence, or failure to opt out, as a means of accepting the arbitration agreement." *Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1285 (9th Cir. 2017) (internal quotation marks and citations omitted).

Here, the parties do not address the issue of assent. Plaintiff concedes that she signed an

3

arbitration agreement, and that the agreement would cover the disputes in question. Plaintiff only argues that the agreement is not enforceable under state law, not that she did not manifest assent to it.

**B.      Unconscionability**

The Court must assess whether the arbitration agreement at issue is valid and enforceable under section 2 of the FAA, 9 U.S.C. § 2. *Ticknor v. Choice Hotels, Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996). "Federal courts sitting in diversity look to the law of the forum state in making a choice of law determination." *Ticknor*, 265 F.3d 931, 937 (citing *Sparling v. Hoffman Constr. Co., Inc.,* 864 F.2d 635, 641 (9th Cir. 1988)). Thus, this Court relies on California contract law to determine the issues raised in this action.

"If a contract is unconscionable, under California law courts may refuse to enforce it." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). To be unenforceable, the arbitration clause must be both procedurally and substantively unconscionable, but not necessarily to the same degree. *Ting v. AT & T*, 319 F.3d 1126, 1148 (9th Cir. 2003). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal 4th 83, 114 (2000).

Plaintiff argues that the arbitration agreement is unenforceable because it is both procedurally and substantively unconscionable. The Court considers each separately.

**1.      Procedural Unconscionability**

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999). Procedural unconscionability requires either of two factors: oppression or surprise. *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997). Oppression "arises from an inequality in

bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* at 1531.

Plaintiff argues that the arbitration agreement is procedurally unconscionable because: (1) it is an adhesion contract, (2) Plaintiff had no opportunity to negotiate the terms or to opt-out, (3) it lacked material information regarding the advantages and disadvantages of arbitration, and (4) it failed to attach the applicable arbitration rules.

### a. **Adhesion**

The California Supreme Court has recognized that "there are degrees of procedural unconscionability." *Gentry v. Superior Court*, 64 Cal. 4th 443, 469 (2007), *abrogated on other grounds by AT & T Mobility v. Concepcion*, 563 U.S. 333, 341-42 (2011) (holding that the FAA preempts California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts). Specifically,

> At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. Although certain terms in these contracts may be construed strictly, courts will not find these contracts substantively unconscionable, no matter how one-sided the terms appear to be. Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced, contain a degree of procedural unconscionability even without any notable surprises, and bear within them the clear danger of oppression and overreaching. *Id.* (internal quotations and citations omitted).

*Id*. Plaintiff contends that the arbitration agreement is unenforceable because she was required to sign it as a condition of employment. The contract is undoubtedly one of adhesion. The agreement was given to Plaintiff on her first day of work at Sterling, and it states "[e]mployee understands that he/she would not be or remain employed by Sterling absent signing this Agreement." (Broadhead Decl. Ex. A at 3.) The Court concludes that the arbitration agreement is an adhesion contract. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (concluding that arbitration agreement was adhesive where "the contract was non-negotiable" and plaintiff's "only choice was to sign it as written or to opt out.").

5

However, not all contracts of adhesion are unconscionable. As California Courts have routinely concluded, ordinary contracts of adhesion are generally enforced. *See Da Loc Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 246, (2016).

### b.  One-Sided Presentation And Opt-Out

Plaintiff's principal argument for procedural unconscionability rests on *Quevedo v. Macy's*, 798 F. Supp. 2d 1122, 1137-38 (2011), where the court concluded that an employer's arbitration agreement was procedurally unconscionable because the materials presented a one-sided view of the benefits of arbitration and made it clear that the company preferred to that its employees participate in the arbitration program. The materials accompanying the arbitration agreement here are substantially similar to those described in *Quevedo*. The materials explaining the RESOLVE Program present only the benefits of arbitration, while emphasizing the disadvantages of advancing claims through the judicial system. For example, the brochure explaining the arbitration program states that "[l]awsuits are disruptive, involve enormous expense, can take years to resolve and often result in disappointing outcomes," but contrasts the arbitration program, which "was designed to provide a more efficient way to deal with workplace disputes without going to court!" (Hatfield Decl. Ex. 3 at 11); *see also Quevedo*, 798 F. Supp. 2d at 1137 (finding arbitration agreement procedurally unconscionable where arbitration brochure described program as "a lot like a court proceeding, but . . . less formal, less time-consuming and less expensive."). The brochure likewise discusses the programs benefits, including an efficient process, review by a skilled mediator, and remedies and awards similar to those available through the judicial system. (Hatfield Decl. Ex. 3 at 11.) The brochure further touts the benefit of finality provided by arbitration program indicating that unlike decisions rendered through the judicial system, which can be "appealed and overthrown," in the arbitration program a favorable decision is "protected for you. The Company cannot appeal." (*Id.* at 15.) The brochure emphasizes the relative time and expense of the judicial system and indicates that the employee's claim "can be dismissed before you've had a chance to present your case" or else decided by a "judge who may not have employment law

experience" or a "jury (of unknown people) selected by the judge and lawyers." (*Id.*); *see also Quevedo*, 798 F. Supp. 2d 1122, 1136 (C.D. Cal. 2011) (noting that the arbitration materials gave a one-sided view of the benefits where they explained that "'[a]n independent arbitrator from outside the Company, specially qualified to hear employment related disputes' hears claims in arbitration, while '[a] judge who may not specialize in employment law or [a] jury who is completely unfamiliar with and has no specific training in employment law' hears claims in court.'").

The RESOLVE materials also make it clear that Defendant prefers or possibly requires that its employees participate in the program, indicating that "[a]ll employees are required to use the program to resolve applicable disputes." (Hatfield Decl. Ex. 3 at 14.) While the agreement itself allows the employee to opt out of the agreement during a thirty-day period, it (confusingly) also requires the employee to acknowledge "that he/she would not be or remain employed by Sterling absent signing this Agreement."[1] (Broadhead Decl. Ex. A at 2.) These materials "left no doubt about [Sterling's] preference." *Quevedo*, 798 F. Supp. 2d at 1137 (quoting *Gentry*, 64 Cal. 4th at 459-61).

The arbitration agreement materials lack material information about the arbitration process and "present a likelihood that employees felt at least some pressure not to opt out." *Id.* at 1138. Therefore, like the agreements in *Quevedo* and *Gentry*, the arbitration agreement here was at least arguably procedurally unconscionable.[2] Defendant has made no effort to distinguish the procedural

---

[1] Plaintiff argues that there was no meaningful opportunity to opt out of the arbitration agreement, because she was not aware of the opt-out provision. The agreement allowed Plaintiff to opt out of the agreement by sending a letter to the RESOLVE Program within thirty days of signing the agreement. (Broadhead Decl. Ex A at 2.) Although the provision was arguably confusing when read in conjunction with the language that indicates Plaintiff "would not be or remain employed absent signing this [arbitration] Agreement," the unconscionability of the opt-out provision does not, as Plaintiff tries to suggest, turn on her specific awareness of the provision. Plaintiff was provided notice of her right to op-out. She did not opt out. The existence of an opt-out provision generally in the arbitration agreement weighs against concluding that the agreement was procedurally unconscionable.

[2] The Court notes that two Ninth Circuit cases concluded that similar agreements were not procedurally unconscionable because they contained opt-out provisions. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002). The Supreme Court of California rejected the analyses in these cases in in *Gentry*. 42 Cal. 4th at 472 n.10. In *Gentry*, the court noted that those cases "did not consider the concealment of disadvantageous terms nor the reality that [the employer] clearly favored arbitration and was in a position to pressure employees to choose its favored option." *Id.* In applying California law, federal courts defer to the California Supreme Court, not the Ninth Circuit. *Wainwright v. Goose*, 464 U.S. 78, 84 (1983).

unconscionability analysis in *Quevedo*, which concluded that a substantially similar arbitration agreement was "at the very least, not entirely free from procedural unconscionability." *Id.* (quoting *Gentry*, 42 Cal. 4th at 472). However, the court in *Quevedo* also concluded that because the "procedural unconscionability is relatively low, a greater showing of substantive unconscionability will be required to render the agreement unenforceable." *Id.* (ultimately concluding that the arbitration agreement was not unconscionable overall). Here, even though the arbitration agreement was an adhesive contract, Plaintiff was given notice and an opportunity to opt out of the agreement. Therefore, here too the procedural unconscionability is relatively low. Accordingly, the Court turns to the substantive unconscionability analysis.

        **c.**    **NAM Rules**

Plaintiff argues that she was not provided a copy of the National Arbitration and Mediation's ("NAM") Employment Rules and Procedures nor the RESOLVE Program Rules, which is grounds for finding that the agreement was procedurally unconscionable. The Court disagrees. The agreement signed by Plaintiff explicitly incorporated the NAM rules, and directed Plaintiff to review those rules online. (Broadhead Decl., Ex. A at 2 ("The Employment Rules and Procedures ("ERP") are available for review on NAM's website at www.namadr.com.").) The inclusion of the rules by reference is sufficient under the law. *Fitz*, 118 Cal. App. 4th at 718 (distinguishing as procedurally proper arbitration agreement where arbitration rules were incorporated by reference). Accordingly, Plaintiff had every opportunity to review the arbitration rules prior to signing the arbitration agreement.

        **2.**    **Substantive Unconscionability**

Substantive unconscionability focuses "on overly harsh or one-sided results." *Armendariz*, 24 Cal. 4th at 114 (quotation marks and citations omitted). An arbitration clause is substantively unconscionable if "the terms of the agreement . . . are so one-sided as to shock the conscience." *Kinney*, 70 Cal. App. 4th at 1329 (emphasis altered). "[M]utuality is the "paramount" consideration when assessing substantive unconscionability." *Pokorny v. Quixtar*, 601 F.3d 987, 997-98 (9th Cir. 2010)

(citations omitted). "Agreements to arbitrate must contain at least 'a modicum of bilaterality' to avoid unconscionability." *Id.* (internal citations and quotations omitted). "[U]nder California law, a contract to arbitrate between an employer and an employee, such as the one we evaluate in this case, raises a rebuttable presumption of substantive unconscionability." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1174 (9th Cir. 2003). "Unless the employer can demonstrate that the effect of a contract to arbitrate is bilateral—as is required under California law—with respect to a particular employee, courts should presume such contracts substantively unconscionable." *Id.*

Plaintiff asserts that the agreement to arbitrate was substantively unconscionable under California law because: (1) the agreement provides for only a one-year statute of limitations for filing a claim, (2) the program allows only for minimal discovery, and (3) the first two steps of the program are designed to deter employees from filing claims and are otherwise not part of a valid alternative dispute resolution program. Because the Court concluded that the arbitration agreement is minimally procedurally unconscionable, Plaintiff must demonstrate that the terms of the agreement are substantively unconscionable to a significant degree to prevail under the sliding scale rule articulated above.

      **a.**      **Statute of Limitations**

Plaintiff argues that the RESOLVE Program's one-year statute of limitations shortens the time for Plaintiff to file a wrongful termination or FEHA claim. *See* Cal. Code Civ. P. § 335.1 (two-year statute of limitations for wrongful termination); Cal. Gov't Code §§ 12960, 12965(b) (one year after termination to file claim with the California Department of Fair Employment & Housing ("DFEH"), plus one additional year from the time DFEH claim is processed to file a Fair Employment & Housing Act ("FEHA") claim). Although contract terms shortening the statute of limitations are generally disfavored, they are not necessarily unenforceable. *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009). "The critical question is whether the period fixed is so unreasonable . . . as to show imposition or undue advantage in some way." *Id.* (internal quotation marks and citations

9

omitted).

Here, the arbitration agreement provides that "[u]nless prohibited by law, a demand to use the RESOLVE Program must be made . . . no later than one (1) year after the alleged unlawful conduct occurred." (Broadhead Decl. Ex. A at 1.) Defendant argues that a contractual provision that unilaterally shortens a statute of limitations period, taken alone, does not necessarily render an adhesion contract substantively unconscionable. *See Soltani v. Western & Southern. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001). However, where "arbitration provisions undermine statutory protections, courts have readily found unconscionability. *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1147 (2012). Here, the agreement shortens Plaintiff's time to bring a wrongful termination claim under California Code of Civil Procedure's general statute of limitations for tort claims. That shortening of the statute of limitations for wrongful termination does not necessarily render the agreement unconscionable, because that statute of limitations is not part of a statutory scheme devised by the legislature. *Id.* (The "import" of a clause shortening the statute of limitations "is quite different in the context of the statutory wage and hour claims asserted here.") Indeed, the Ninth Circuit upheld an arbitration agreement that shortened the time to file a wrongful termination claim to six months in *Soltani*. 258 F.3d at 1044. However, the agreement also shortens an employee's time to file a FEHA claim, which does render that provision unconscionable. *See Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 731 (2017) (arbitration program shortening the time to vindicate rights under FEHA "violated the public policy embodied in [the statute], which establishes the statutory time period the Legislature has impliedly determined will allow for an aggrieved party to vindicate his or her statutory rights"); *see also Armendariz*, 24 Cal. 4th at 101 ("it is evident that an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA").

As Defendant argues in the alternative, the agreement creates an exception to preserve Plaintiff's right to bring claims when a shortened statute of limitations is "prohibited by law." Here, the statutory scheme does not require Plaintiff to file her claim within a year. Rather, she has a year to file an

administrative claim with DFEH, and then another year from the time that such claim is administratively handled to file a civil claim. Cal. Gov't Code § 12965(b). To the extent that those two provisions conflict, the statute's longer period prevails under the law. *Armendariz*, 24 Cal. 4th at 101. Although a one-year statute of limitations would be unconscionable as applied to Plaintiff's civil claim under FEHA, the clause within the arbitration agreement that prevents shortening a statute of limitations where "prohibited by law" saves the agreement from being rendered unconscionable. Here, Plaintiff's time to file a FEHA claim cannot be shortened lawfully. *Id.* Therefore, the shortened statute of limitations in the RESOLVE agreement does apply to bar FEHA claims brought within the statutory timeframe. *Baxter*, 16 Cal. App. 5th at 733. In any event, Plaintiff filed her initial RESOLVE claim within the program's one-year period, so the shortened statute of limitations does not affect these proceedings.

    **b.**   **Adequate Discovery**

Plaintiff next argues that the agreement is substantively unconscionable because it does not provide her the opportunity to conduct adequate discovery to bring her claim. Under the RESOLVE Program, a party may propound up to twenty interrogatories and request up to thirty documents. (Declaration of Paul M. Smith ("Smith Decl.") Ex. A at 6-7.) Each party can take up to three depositions. (*Id.*) Additional discovery will be permitted upon a showing of substantial need. (*Id.*)

In an alternative dispute resolution proceeding designed to resolve a FEHA dispute, parties are entitled "to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review." *Armendariz*, 24 Cal. 4th at 106. However, parties may "agree to something less than the full panoply of discovery provided in [a civil action]." *Id.* at 105-06.

In support of their position that the discovery procedures set forth in the RESOLVE Program are unreasonable, Plaintiff cites *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 787 (9th Cir. 2002). In *Ferguson*, the court held that the arbitration agreement's discovery procedures, which allowed for three non-expert depositions and thirty discovery requests of any type, contributed to a finding that the

agreement was substantively unconscionable. *Id.* at 786. However, the court's analysis was broader than a straightforward proclamation that the discovery permitted (three depositions and thirty document requests) was substantively unconscionable. The Court noted that the discovery procedures in Countrywide's arbitration agreement evinced "an insidious pattern" that "appear[ed] to favor Countrywide at the expense of its employees" at every turn. *Id.* at 787. The Court went on to note that the problem was not limited to the discovery procedure. *Id.* Rather, "the entire agreement seems drawn to provide Countrywide with undue advantages should an employment-related dispute arise." *Id.* ("Aside from merely availing itself of the cost-saving benefits of arbitration, Countrywide has sought to advantage itself substantively by tilting the playing field."). The court's determination was also based on its conclusion that the agreement only covered certain claims – those likely to be brought by employees against the company, and not the other way around. *Id.* at 784-85.

Here, the discovery procedures apply to both parties, and do not appear to this Court to "tilt[] the playing field towards the employer." *Id.* The agreement binds both parties to use the RESOLVE Program to address any claim related to employment.[3] (Broadhead Decl. Ex. A.) Unlike the dispute resolution program at issue in *Ferguson*, which strategically applied only to the types of claims brought by employees, the agreement here applies broadly to all claims arising from the employment. Assessing the totality of the circumstances, the Court determines that the applicable discovery procedures under the RESOLVE Program are reasonable and do not "shock the conscience." *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1109, 1119 (C.D. Cal. 2015) (collecting cases and concluding that substantially similar discovery procedures (initial disclosures, twenty interrogatories, and three depositions, with additional discovery available upon showing of "substantial need") did not "unfairly or unconscionably limit a party's ability to conduct discovery"); *see also Dotson v. Amgen,*

---

[3] Certain claims such as those for worker's compensation benefits, unemployment compensation benefits, and criminal charges, are excluded. California courts have recognized that those types of claims would not be amenable to alternative dispute resolution in any event. *See Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 709 (1994).

12

*Inc.*, 181 Cal. App. 4th 975, 983 (2010) (reversing finding that program providing for deposition of one natural person and all expert witnesses was unconscionable, noting that "arbitration is meant to be a streamlined procedure. Limitations on discovery, including the number of depositions, is one of the ways streamlining is achieved."). "We assume that the arbitrator will operate in a reasonable manner in conformity with the law." *Dotson*, 181 Cal. App. 4th at 984. The discovery provisions in the arbitration agreement provide more than minimal discovery and, standing alone, do not render it unconscionable. Moreover, Plaintiff has not explained why the discovery procedures are inadequate as applied to the dispute in this case. *Baxter v. Genworth N. Am. Corp.*, 16 Cal. App. 5th 713, 729 (2017) (noting that discovery restrictions did not render agreement unconscionable where an employee "failed to offer any showing that the default levels of discovery would be inadequate"). The discovery procedures in the agreement are sufficient and do not render the agreement substantively unconscionable.

        **c.**      **Pre-Arbitration Procedures**

Plaintiff argues that the RESOLVE Program's first two steps, which require an employee to go through internal grievance procedures before proceeding to arbitration, render the agreement unconscionable. Plaintiff points out that these steps are one-sided, force the employee to preview her claims to the employer before arbitration, and are designed to discourage claims and to discourage the employee from submitting her claims to binding arbitration. Defendant counters that the pre-arbitration process applies equally to the employer, and therefore is not one-sided, and that the inclusion of pre-arbitration steps in the process alone does not render the agreement substantively unconscionable.

In *Nyulassy v. Lockheed Martin Corp.*, the court considered a provision requiring an employee to engage in discussions with management prior to submitting a claim to arbitration. 120 Cal. App. 4th 1267, 1282-83 (2004). The court noted that such a provision "on its face . . . m[ight] present a laudable mechanism for resolving employment disputes informally," but ultimately concluded that the unilateral nature of the arbitration agreement cast the requirements in a different light. *Id.* In that vein, the court observed that "requiring plaintiff to submit to an employer-controlled dispute resolution mechanism

13

(i.e., one without a neutral mediator) suggests that defendant would receive a 'free peek' at plaintiff's case, thereby obtaining an advantage if and when plaintiff [was] to later demand arbitration." *Id.*

However, *Nyulassy* considered the pre-arbitration steps required in the context of the entire agreement, which it concluded was impermissibly unilateral. In *Quevedo*, the court distinguished *Nyulassy*, and concluded that pre-arbitration requirements, standing alone, did not render the agreement substantively unconscionable. 798 F. Supp. 2d at 1140. The Court noted that the agreement at issue was "not unilateral and expressly provide[d] that '[a]rbitration shall apply to any and all such civil disputes, controversies or claims asserted by the Company against the Associate.'" *Id.* Although the agreement at issue in *Quevedo*, required the parties to engage in several steps prior to participating in arbitration, it was not unconscionable because it was essentially mutual. *Id.* As discussed, the agreement here binds the employer to "utilize the RESOLVE Program for any claims against Employee(s)." (Broadhead Decl. Ex. A.)

Defendant contends in their brief that "Defendant must submit its claims against any employee to the RESOLVE Program, including full and meaningful participation in Steps 1 and 2 before binding arbitration." (ECF No. 15 at 7.) However, their contention is belied by the materials describing the RESOLVE Program, which strongly suggest that these steps only apply to the employee. *See McKinney v. Bonilla*, No. 07-cv-2373, 2010 WL 2817179 (S.D. Cal. July 16, 2010) (concluding that requirement that employee take additional steps to resolve dispute informally prior to arbitration rendered the agreement unconscionable under California law). First, the agreement itself outlines a timeline for Steps 1 and 2 that ascribes specific responsibilities to each party. (Broadhead Decl. Ex. A.) It indicates that that "Sterling" has 30 days from receipt of a Step 1 claim form to send an initial claim review to the employee. (*Id.*) "Employee" then has "30 days from receipt of Step 1 claim form determination to request, complete, postmark and send Step 2 appeal claim form." (*Id.*) Although both parties are involved in Steps 1 and 2, there is nothing bilateral about these steps. Each party plays a different role in Steps 1 and 2, and there is no indication in the arbitration agreement nor anywhere else how Steps 1

14

and 2 would play out if Sterling was bringing the claim against the employee instead of vice versa.

The brochure on the RESOLVE Program is not to the contrary. It indicates that Step 1 requires "[a]n *employee* who believes he/she has been subjected to unlawful employment action, harassment or termination" to contact the RESOLVE Program Administrator to file a complaint. (Hatfield Decl. Ex. 3 at 2.) The employee's complaint is then reviewed by a Program Administrator – who is employed by the company and is not a neutral arbitrator – and a response is mailed to the employee within thirty days. (*Id.*) Step 2 allows the employee to appeal that decision for further review. (*Id.* at 3.) Step 3 is arbitration.

Although the agreement on its face requires both the employer and the employee to use the RESOLVE Program to address disputes, it is apparent from the language of the agreement and from the way the program is described in the brochure that Steps 1 and 2 apply only to the employee, who is "required to complete . . . additional steps that are not required of the employer." *McKinney*, 2010 WL 2817179, at *7. The lack of mutuality with respect to these pre-arbitration steps, combined with the concern articulated in *Nyulassy* about allowing the employer to preview the employee's case before arbitration, render this condition substantively unconscionable under the circumstances. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987-998-99 (9th Cir. 2010) (holding portions of the arbitration agreements substantively unconscionable because only the plaintiff, and not the defendant, was required to submit its claim to a conciliatory process controlled by defendant); *see also McKinney*, 2010 WL 2817179, at *7("[r]equiring [employer] to seek the approval of its senior management and president prior to mandatory mediation and binding arbitration imposes no burden on [employer] while requiring [employee] to reveal the details of his case prior to reaching a neutral mediator."). Therefore, the Court concludes that the multi-step procedures that the employee is required to comply with prior to arbitration are substantively unconscionable under *Nyulassy*. *See Valdez v. Terminix Int'l Co. Ltd. P'ship*, No. CV 14-09748 DDP (EX), 2015 WL 12861156, at *6 (C.D. Cal. July 16, 2015) ("There is no federal policy favoring arbitration under a certain set of procedural rules—much less a federal policy favoring in-

house, multi-step procedures prior to arbitration." (quotation marks and citations omitted)).

**3. <u>Severability</u>**

Both procedural and substantive unconscionability must be present for a court to refuse to enforce an arbitration agreement under the doctrine of unconscionability. *Armendariz*, 24 Cal. 4th at 114. As discussed more fully above, this Court finds that the contract is procedurally unconscionable, because it is an adhesion contract. This Court finds further that the unilateral pre-arbitration claims process of the RESOLVE Program is substantively unconscionable because these proceedings apply only to the employee. "If the court as a matter of law finds that the contract or any clause of the contract to have been unconscionable . . . the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." *Id.* at 121-22 (quoting Cal. Civ. Code section 1670.5(a)). The court has discretion to "refuse to enforce the contract as a whole if it is permeated with unconscionability, or it may strike any single clause or group of clauses which are so tainted or are contrary to the essential purpose of the agreement." *Id.*

On balance, the Court concludes that the agreement at issue in this case has a low degree of procedural unconscionability and a relatively low degree of substantive unconscionability, save for the multi-step pre-arbitration process to which only the employee appears to be subject. The RESOLVE Program does not permeate with unconscionability. Most provisions, as discussed more fully above, contain the essential bilaterality of an arbitration agreement between an employer and an employee.

Because the substantively unconscionable requirement of one-sided pre-arbitration dispute resolution steps is "collateral to the main purpose of the contract," severance is appropriate. *Armendariz*, 24 Cal. 4th at 124. Additionally, the Court considers the federal and state policy in favor of arbitration. *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1024-25 (E.D. Cal. 2008) (citations omitted). Therefore, this Court GRANTS Defendant's motion to compel arbitration in accordance with Step 3 of the RESOLVE Program, but severs the unilateral requirement that Plaintiff

comply with Step 1 and Step 2 of the RESOLVE Program prior to arbitration.

**CONCLUSION AND ORDER**

For the reasons set forth above, the motion to compel arbitration is GRANTED, but the unilateral requirement that Plaintiff comply with pre-arbitration procedures as a necessary prerequisite to arbitration is severed from the agreement.

IT IS SO ORDERED.

Dated: __**July 10, 2018**__             __/s/ Lawrence J. O'Neill__  
                                            UNITED STATES CHIEF DISTRICT JUDGE